UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x

NATALIE DAVILAR

                Plaintiff,

      -against-

COMMISSIONER OF SOCIAL SECURITY

                Defendant.

-------------------------------------------------------------------x

**NOT FOR PUBLICATION**

**SUMMARY ORDER**

15-CV-7200 (LDH)

L<small>A</small>SHANN D<small>E</small>ARCY HALL, United States District Judge:

Plaintiff Natalie Davilar, proceeding pro se, appeals the denial of Defendant Commissioner of Social Security's (the "Commissioner") denial of her application for disability insurance benefits and supplemental social security income. Defendant has moved pursuant to Federal Rule of Civil Procedure 12(c) for judgment on the pleadings, requesting that this Court affirm the Commissioner's determination that Plaintiff was not disabled. Despite having been granted additional time to respond to Defendant's motion (*see* Order, Nov. 13, 2016), Plaintiff has failed to submit an opposition.

## BACKGROUND

Plaintiff filed an application for disability insurance benefits and supplemental security income on August 30, 2012, alleging a disability onset date of October 12, 2010. (Tr. 20, 56. 97, 194, ECF No. 7.)[1] Plaintiff alleged that she was disabled due to depression, anxiety, panic attacks, emotional instability, high blood pressure, a "weight problem," and heart disease/hardening muscle. (Tr. 221; Complaint 1, ECF No. 1.) Plaintiff's claims were denied on February 4, 2013, and Plaintiff subsequently requested an administrative hearing. (Tr. 79, 89.)

---

[1] Citations to "Tr." refer to the certified copy of the administrative record of proceedings filed by the Commissioner as part of her answer.

A hearing was held on August 1, 2014. (Tr. 33-55.) On August 15, 2014, the administrative law judge (the "ALJ") denied Plaintiff's claim. (Tr. 17-27.) Plaintiff filed a request for review with the Appeals Council, which was denied on October 16, 2015, making the ALJ's decision final. (Tr. 2-4.) The Court assumes the parties' familiarity with Plaintiff's medical history, contained in the administrative transcript, and set forth in Defendant's memorandum of law in support of her motion.

## STANDARD OF REVIEW

A motion for judgment on the pleadings is reviewed under the same standard as a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *Bank of New York v. First Millennium*, 607 F.3d 905, 922 (2d Cir. 2010) ("The same standard applicable to Fed. R. Civ. P. 12(b)(6) motions to dismiss applies to Fed. R. Civ. P. 12(c) motions for judgment on the pleadings."). Even where a motion for judgment on the pleadings is unopposed, the Court must still review the entire record and ensure that the moving party is entitled to judgment as a matter of law. *See Martell v. Astrue*, No. 09-cv-1701, 2010 WL 4159383, at *2 n.4 (S.D.N.Y. Oct. 20, 2010) (confirming court's obligation to review entire record in deciding unopposed motion for judgment on the pleadings in social security benefits case); *McDowell v. Comm'r of Soc. Sec.*, No. 08-cv-1783, 2010 WL 5026745, at *1 (E.D.N.Y. Dec. 3, 2010) ("Even where such a motion is unopposed, the court may not grant the motion by default."). Further, when a plaintiff proceeds pro se, the court will read her submissions liberally and "interpret them to raise the strongest arguments that they suggest." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994) (citing *Mikinberg v. Baltic S.S. Co.*, 988 F.2d 327, 330 (2d Cir. 1993)).

Under the Social Security Act, a disability claimant may seek judicial review of the Commissioner's decision to deny her application for benefits. 42 U.S.C. §§ 405(g), 1383(c)(3);

*see also Felder v. Astrue*, No. 10-cv-5747, 2012 WL 3993594, at *8 (E.D.N.Y. Sept. 11, 2012). In conducting such review, the Court is tasked only with determining whether the Commissioner's decision is based on correct legal standards and supported by substantial evidence. 42 U.S.C. § 405(g); *see also Burgess v. Astrue*, 537 F.3d 117, 127 (2d Cir. 2008) (citing *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000)).

The substantial evidence standard does not require that the Commissioner's decision be supported by a preponderance of the evidence. *Schauer v. Schweiker*, 675 F.2d 55, 57 (2d Cir. 1982) ("[A] factual issue in a benefits proceeding need not be resolved in accordance with the preponderance of the evidence . . . ."). Instead, the Commissioner's decision need only be supported by "more than a mere scintilla" of evidence and by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pollard v. Halter*, 377 F.3d 183, 188 (2d Cir. 2004) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). In deciding whether the Commissioner's findings are supported by substantial evidence, the Court must examine the entire record and consider all evidence that could either support or contradict the Commissioner's determination. *See Jones ex. rel. T.J. v. Astrue*, No. 07-cv-4886, 2010 WL 1049283, at *4 (E.D.N.Y. Mar. 17, 2010) (citing *Snell v. Apfel*, 171 F.3d 128, 132 (2d Cir. 1999)), *aff'd sub nom. Jones ex rel. Jones v. Comm'r of Soc. Sec.*, 432 F. App'x 23 (2d Cir. 2011). Still, the Court must defer to the Commissioner's conclusions regarding the weight of conflicting evidence. *See Cage v. Comm'r of Social Sec.*, 692 F.3d 118, 122 (2d Cir. 2012) (citing *Clark v. Comm'r of Soc. Sec.*, 143 F.3d 115, 118 (2d Cir. 1998)). If the Commissioner's findings are supported by substantial evidence, then they are conclusive and must be affirmed. *Ortiz v. Comm'r of Soc. Sec.*, No. 15-cv-3966, 2016 WL 3264162, at *3 (E.D.N.Y. June 14, 2016) (citing 42 U.S.C. § 405(g)). Indeed, if supported by substantial evidence, the

Commissioner's findings must be sustained, even if substantial evidence could support a contrary conclusion or where the Court's independent analysis might differ from the Commissioner's. *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992) (citing *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982)); *Anderson v. Sullivan*, 725 F. Supp. 704, 706 (W.D.N.Y. 1989); *Spena v. Heckler*, 587 F. Supp. 1279, 1282 (S.D.N.Y. 1984)).

The Code of Federal Regulations for Social Security (the "Regulations") establishes a sequential five-step process for determining whether a claimant is disabled within the meaning of the Act. 20 C.F.R. §§ 404.1520(a)-(h), 416.920(a)-(h). At the first step, the Commissioner must determine whether the claimant is engaged in substantial gainful activity. *Id.* §§ 404.1520(b), 416.920(b). If not, the Commissioner must proceed to the second step to determine whether the claimant has a severe medically determinable impairment or combination of impairments. *Id.* §§ 404.1520(c), 416.920(c). An impairment is severe if it significantly limits a claimant's abilities to perform "basic work activities." *Id.* §§ 404.1520(c), 416.920(c). If the claimant has a medically determinable severe impairment, the Commissioner will proceed to step three to determine whether any identified severe impairments meet or medically equal those identified in Appendix 1 to the Act. *Id.* §§ 404.1520(d), 416.920(d). Such impairments are per se disabling if a claimant meets the duration requirements. *Id.* §§ 404.1520(d), 416.920(d).

When evaluating the severity of mental impairments, the Regulations require the ALJ to apply an additional "special technique" at the second and third steps of the review. *See* 20 C.F.R. §§ 404.1520a(a), 416.920a(a); *see also Kohler v. Astrue*, 546 F. 3d 260, 265-66 (2d Cir. 2008).[2] *First*, the ALJ must determine whether the claimant has a medically determinable

---

[2] On January 17, 2017, following the date of the ALJ's decision, new regulations came into effect changing the test applied to assess whether a mental impairment is disabling. *See* Evaluation of Mental Impairments, 20 C.F.R. § 404.1520a (2017). The Court applies the regulations in effect at the time of the ALJ's decision. *See* Revised Med. Criteria for Evaluating Mental Disorders, 81 Fed. Reg. 66138-01, 66138 n.1 (Sept. 26, 2016) ("We expect that

4

mental impairment. *See* 20 C.F.R. §§ 404.1520a(b)(1), 416.920a(b)(1). *Second*, if such a mental impairment is found, the ALJ must rate the degree of the claimant's functional limitations in light of the impairment(s) in four areas: (1) activities of daily living; (2) social functioning; (3) concentration, persistence, or pace; and (4) episodes of decompensation. 20 C.F.R. §§ 404.1520a(c)(3), 416.920a(c)(3). The ALJ must make a specific finding as to the degree of limitation in each of the functional areas. 20 C.F.R. §§ 404.1520a(e)(4), 416.920a(e)(4). If a claimant's mental impairment is severe, the ALJ will determine whether the impairment meets or medically equals the severity of a listed mental disorder. *Id.* §§ 404.1520a(d)(2); 416.920a(d)(2). If an impairment meets or equals an impairment found in a listing, the claimant is disabled. *Id.* §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If it does not, the ALJ proceeds to step four of the evaluation process. *Id.* §§ 404.1520a(d)(3), 416.920a(d)(3).

If a claimant's impairments are not per se disabling, the ALJ must assess the claimant's ability to work in light of her limitations, otherwise known as her residual functional capacity ("RFC"). *Id.* §§ 404.1520(a)(4)(iv), 404.1520a(d)(3), 404.1545(a)(1), 416.920(e). Once the claimant's RFC is decided, the Commissioner must undertake to establish whether the claimant's RFC will allow her to perform past relevant work. *Id.* §§ 404.1520(f), 416.920(f). If the claimant's RFC precludes her from performing past relevant work, the Commissioner bears the burden of proving that, given her RFC, age, education, and work experience, the claimant can do other work that exists in significant numbers in the national economy. *Id.* §§ 404.1512(f), 416.912(f). If such work exists, the claimant is not disabled. *Id.* §§ 404.1520(g)(1), 416.920(g)(1).

---

Federal courts will review our final decisions using the rules that were in effect at the time we issued the decisions.").

## DISCUSSION

In determining whether Plaintiff was disabled, the ALJ followed the sequential five-step process. *First,* the ALJ found that Plaintiff had not engaged in substantial gainful activity since October 12, 2010, the alleged onset date of her disability. (Tr. 22.) *Second*, the ALJ found that the Plaintiff had the following severe impairments: a low back disorder and an anxiety disorder. (*Id.*) *Third*, the ALJ found that Plaintiff's physical impairment did not meet or medically equal the severity of the impairments in the listing. (*Id.* at 23.) With respect to Plaintiff's physical impairment, the ALJ determined that there was no evidence that her low back disorder satisfied the listing requirements. (*Id.*) With respect to Plaintiff's mental impairment, the ALJ found that it did not meet or medically equal the criteria of listing 12.06 (Anxiety Related Disorders). (*Id.*); *see* 20 C.F.R. § 404, Subpart P, App'x 1. Specifically, the ALJ determined that Plaintiff did not establish the requisite functional limitations set forth in "paragraph B" of listing 12.06 because she had: a mild restriction with respect to activities of daily living; a moderate restriction with respect to social functioning; moderate restrictions with respect to concentration, persistence, or pace; and no evidence of any episodes of decompensation of extended duration. (Tr. 23.) Listing 12.06 also contains additional criteria set forth in "paragraph C," which the ALJ found that Plaintiff also did not satisfy. (*Id.*) *Fourth*, the ALJ determined that, in light of her impairments, Plaintiff had the residual functional capacity to perform "light work," as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), except that Plaintiff could only perform work involving simple, routine, repetitive tasks, and which required only occasional interactions with supervisors, coworkers and the public. (*Id.* at 24.) *Fifth*, the ALJ determined that Plaintiff could perform the following jobs: small parts assembler (Dictionary of Occupational Titles ("DOT")

code 706.684-022), cleaner/housekeeper (DOT code 323.687-014), and hand bander (DOT code 920.687-026). (Tr. 27.)

I. **ALJ's Determinations as to Plaintiff's Physical Impairments**

   A. **The ALJ's Determination as to the Severity of Plaintiff's Physical Impairments Was Supported by Substantial Evidence**

   The ALJ determined that Plaintiff only had one severe physical impairment, a low back disorder. Plaintiff's other alleged impairments, high blood pressure, obesity, adrenal adenoma, heart disease, and knee pain, were not found to be severe. (Tr. 22.) Defendant maintains that each of the ALJ's findings is supported by substantial evidence. (Def.'s Mem. Supp. 14-16, ECF No. 16.) For the reasons set forth below, the Court agrees.

   1. **High Blood Pressure**

   Plaintiff complained she was disabled, in part, by high blood pressure (hypertension). (Tr. 221.) However, a review of doctors' notes show that Plaintiff's blood pressure was well controlled by medication. (*See e.g.*, Tr. 267 (noting "benign hypertension"), 275, 279, 295, 297 (same); 722 (noting "BP" was "controlled").) Thus, the ALJ's determination that Plaintiff's hypertension was not a severe impairment was supported by the record.

   2. **Obesity**

   Plaintiff also alleged disability due to a "weight problem." (Tr. 221.) Doctors' reports indicate that Plaintiff was obese. (*See, e,g.*, Tr. 270, 298, 309.) Although obesity is no longer considered to be per se disabling under the Regulations, *see* Revised Medical Criteria for Determination of Disability, Endocrine System and Related Criteria, 64 Fed. Reg. 46122, 46122 (Aug. 24, 1999) (explaining that "obesity" was removed from the listing of impairments), an ALJ should nevertheless address whether a plaintiff's obesity can be considered a severe impairment. *See* SSR 02-1p, 67 Fed. Reg. 57,859, 57,861-62 (Sept. 12, 2002) ("[W]e will find

that obesity is a 'severe' impairment when, alone or in combination with another medically determinable physical or mental impairment(s), it significantly limits an individual's physical or mental ability to do basic work.").

Here, there is no evidence that the ALJ explicitly considered how Plaintiff's obesity may have affected her ability to engage in work-related activities. However, this is not an error of law. By considering the physical limitations established by Plaintiff's treating and consultative physicians, the ALJ effectively addressed the extent to which Plaintiff's obesity affected her ability to perform work-related activities. *See Watson v. Astrue*, No. 08-cv-1523, 2010 WL 1645060, at *5 (S.D.N.Y. Apr. 22, 2010) (order adopting report and recommendation) ("[B]ecause the ALJ adopted the physical limitations findings of [examining physicians], which necessarily incorporated an assessment of Plaintiff's asserted obesity, her failure to explicitly discuss obesity was not an error of law.") As such, the record supports the ALJ's finding that Plaintiff's obesity was not a severe impairment.

### 3. Adrenal Adenoma (Adrenal Tumor)

Although Plaintiff did not list adrenal adenoma as a cause of her alleged disability on her application for disability benefits, she made reference to it in the complaint filed in this action (*see* Compl. at 1) and during her testimony at the hearing before the ALJ. (Tr. 44-46.) Specifically, Plaintiff testified that she was informed by a doctor that her adrenal tumor could "rupture and kill [her]." (Tr. 45.) She also testified that the tumor resulted in pain "on the left side right down to [her] legs and [her] ankles." (*Id*.) While no explicit finding was made by the ALJ as to Plaintiff's claims that her tumor was likely to be fatal, the record evidence suggests her

8

statement was unfounded.³  Notes from Plaintiff's treating physician, Dr. Ngozi Oji, indicate that

Plaintiff was diagnosed with an adrenal gland tumor as early as 2008.  (*See* Tr. 266 ("[a]drenal

neoplasm⁴ stable 2008), 298 (noting "left adrenal tumor"), 306, 309 ("adrenal gland anomaly").)

Dr. Oji's notes do not indicate any follow-up was required for any adrenal abnormalities, as

compared with proposed treatment plans for Plaintiff's other diagnosed conditions.  (*See e.g.*, Tr.

267 (noting treatment plan for hypertension and GERD).)  Further, a CT scan from July 2013

noted that her adrenal adenoma was "stable" and did not require any further action.  (Tr. 269,

625.)  Finally, according to consultative examiner Dr. Vinod Thukral in 2014, Plaintiff "denie[d]

any symptomology to due to the benign adrenal tumor."  (*Id.* at 797.)  The ALJ's determination

that Plaintiff's adrenal tumor was not a severe impairment was supported by the record.

### 4. Heart Disease

Plaintiff testified that she had heart disease that limited her ability to travel.  (*See* Tr. 41.)

She stated that because of her condition, she "really can't go anywhere," and "can't walk far."

(*Id.*)  She stated that a Dr. "Manover [sic]" recommended that she limit her activities because of

her heart disease.  (*Id.* at 42.)  However, nothing in Dr. Manvar's notes indicate any such

diagnosis.  In an April 19, 2013 cardiology follow-up appointment, Dr. Manvar noted that

Plaintiff had experienced occasional anxiety and palpitations.  (*Id.* at 616.)  He reported that

Plaintiff had a history of patent, or unobstructed, coronaries, and diagnosed palpitations.  (*Id.* at

616-17.)  A July 26, 2013 cardiology follow-up appointment noted similar findings.  (*Id.* at 622-

23.)  Notes from a May 20, 2013 appointment with Dr. Oji noted that Plaintiff complained of

---

³ There is evidence that this information may have been relayed to Plaintiff by her husband.  (*See* Tr. 849 (doctor's note that Plaintiff was told by husband she would die within months if she didn't "do something about her adrenal tumors," but also indicating that condition was stable since 2008).)
⁴ A "neoplasm," is an "abnormal mass of tissues that results when cells divide more than they should or do not die when they should.  Neoplasms may be benign (not cancer) or malignant (cancer).  Also called a tumor."  *See* U.S. Nat'l Library of Med., available at https://www.ncbi.nlm.nih.gov/pubmedhealth/PMHT0024119/ (last visited Mar. 15, 2017).

"occasional chest pain" that was non-exertional. (*Id.* at 618.) Dr. Oji's notes also indicated that Plaintiff had no heart murmurs, her heart rate and rhythm were regular and she had normal S1S2 sounds. (*Id.* at 616, 622, 624.) Finally, a September 26, 2013 chest x-ray, ordered by Dr. Oji, found that there was no evidence Plaintiff had acute cardiopulmonary disease. (*Id.* at 636.) The ALJ's determination that Plaintiff's heart disease was not a severe impairment was supported by the record.

### 5. Knee Pain

Plaintiff alleged that she was disabled as a result of knee pain, but it does not appear, however, that Plaintiff sought medical treatment for her knee pain. (*See* Tr. 46; Compl. 1.) Further, notes from Plaintiff's treating physician, Dr. Oji, are devoid of any diagnosis of a condition that would cause knee pain. (*See e.g.*, Tr. 266-67, 274-75; *but see* Tr. 278 (noting Plaintiff took Tylenol for knee pain).) Dr. Oji's notes make reference to x-rays of Plaintiff's knees, the results of which were "negative." (*Id.* at 278.) These results are confirmed by the reports from Plaintiff's September 2012 x-rays, which resulted in no significant findings. (Tr. 763.) Plaintiff also complained of knee pain to one of the consultative examiners. (Tr. 539.) There, too, no diagnosis was made as to the cause of Plaintiff's symptoms. (*Id.*) There are no objective medical findings to support Plaintiff's claims that her knee pain was disabling. For these reasons, there is substantial evidence in the record that supports the ALJ's finding that Plaintiff's knee pain was not a severe impairment.

### 6. Low Back Pain

The ALJ found that there was evidence that Plaintiff's low back pain was a severe impairment, and the Court agrees. Plaintiff testified that she suffered from low back pain (Tr. 38-39), and raised similar complaints with consultative examiners Drs. Kropsky and Thukral (Tr.

10

539, 797.) Both consultative examiners noted that Plaintiff would have work-related activity limitations as a result of her back pain. (Tr. 542, 800.) There is substantial evidence that Plaintiff's low back pain significantly limited her ability to perform "basic work activities," 20 C.F.R. §§ 404.1520(c), 416.920(c), and as such, was properly classified as severe.

### B. The ALJ Failed to Properly Develop the Record as to Plaintiff's Low Back Pain

The ALJ found that Plaintiff could perform light work, specifically, "jobs involving simple, routine[,] repetitive tasks, and requiring only occasional interaction with supervisors, coworkers[,] and the public." (Tr. 24.) However, the ALJ did not properly develop the record to support such a finding because he did not obtain a treating source's opinion regarding Plaintiff's RFC.

An ALJ has a duty to "affirmatively develop the record in light of the essentially non-adversarial nature of a benefits proceeding." *Hilsdorf v. Comm'r of Soc. Sec.*, 724 F. Supp. 2d 330, 342-43 (E.D.N.Y. 2010) (quoting *Burgess*, 537 F.3d at 128). This duty "includes insuring that the record as a whole is complete and detailed enough to allow the ALJ to determine the claimant's RFC." *Sigmen v. Colvin*, No. 13-cv-0268, 2015 WL 251768, at *11 (E.D.N.Y. Jan. 20, 2015) (quoting *Casino-Ortiz v. Astrue*, No. 06-cv-0155, 2007 WL 2745704, at *7 (S.D.N.Y. Sept. 21, 2007), *report and recommendation adopted by* 2008 WL 461375 (S.D.N.Y. Feb. 20, 2008)). A record is not necessarily incomplete simply because it lacks an RFC assessment. *Id.* (citing *Casino-Ortiz*, 2007 WL 2745704, at *8). However, where an RFC assessment is lacking, the ALJ must take the affirmative step of requesting one from a treating source before making a determination as to the plaintiff's disability. *Johnson v. Astrue*, 811 F. Supp. 2d 618, 629-31 (E.D.N.Y. 2011) (remanding for ALJ to obtain RFC assessment from treating source); *Robins v. Astrue*, No. 10-cv-3281, 2011 WL 2446371, at *3 (E.D.N.Y. 2011) ("Although the regulation

provides that the lack of such a statement will not render a report incomplete, it nevertheless promises that the Commissioner will request one.") (citing 20 C.F.R. §§ 404.1512(d), 404.1513(b)(6)). Put differently, the ALJ has "an affirmative duty to request RFC assessments from a plaintiff's treating sources despite what is otherwise a complete medical history." *Johnson*, 811 F. Supp. 2d at 630.

Despite observing that Dr. Oji did not include any significant work-related limitations in her treatment notes (Tr. 25), the ALJ failed to request a statement from Dr. Oji as to what work-related activities Plaintiff could perform in light of her impairments. The ALJ's failure to request such information is reversible error. *See Johnson*, 811 F. Supp. 2d at 630-31 (remanding with instruction for ALJ to request assessments from plaintiff's treating sources).

Rather than requesting the required information, the ALJ relied heavily on the findings of consultative examiners to determine Plaintiff's RFC. (Tr. 25.) If, on remand, after having requested assessments from Plaintiff's treating physicians concerning the extent of her functional limitations, the ALJ again gives "substantial weight" to the opinions of the consultative examiners, the ALJ must give good reasons for not according controlling weight to the opinions of Plaintiff's treating physicians.

## II. ALJ's Determinations as to Plaintiff's Mental Impairments

### A. The ALJ's Determination as to the Severity of Plaintiff's Mental Impairments Was Supported by Substantial Evidence

The ALJ determined that Plaintiff's depression and other emotional issues did not constitute a severe impairment. The ALJ relied on record evidence that demonstrated inconsistent reporting that Plaintiff experienced mild to moderate depressive symptoms. (Tr. 24-25.) For example, while Plaintiff did report experiencing some depressive symptoms (*see e.g.*, Tr. 372), on several occasions, Plaintiff denied experiencing any such symptoms. (Tr. 364, 378,

390, 845.) Notes from Plaintiff's psychiatrist, Dr. Yuriy Dobry, indicated that Plaintiff denied "significant depressive symptoms," and Dr. Dobry later reported that any such symptoms were mild. (*Id.* at 414, 423.) As such, the ALJ's determination with respect to Plaintiff's depression and emotional stability is supported by the record.

The ALJ found that Plaintiff's sole severe mental impairment was an anxiety disorder. (Tr. 22.) Treatment records from Community Counseling & Mediation ("CCM") from November 2012 through July 2014 indicate that Plaintiff sought treatment for anxiety and panic disorders and mild depressive symptoms. (*Id.* at 423 (noting depressive symptoms were secondary to anxiety).) CCM records indicate that, when evaluated by Dr. Dobry in January 2013, Plaintiff's generalized anxiety and panic attacks were rated as moderate. (*Id.* at 424.) The form indicates that a rating of "moderate" reflects "[s]ignificant impact on quality of life and/or day-to-day functioning." (*Id.*) Similarly, at the hearing, Plaintiff testified that her main problems were her anxiety and panic attacks. (*Id.* at 36.) Thus, there was sufficient evidence in the record that Plaintiff's anxiety was a severe impairment.

**B. The ALJ Failed to Properly Develop the Record as to Plaintiff's Anxiety Disorder**

Notwithstanding the ALJ's correct determination as to the severity of Plaintiff's anxiety disorder, the ALJ did not properly assess the Plaintiff's RFC. As discussed above, an ALJ has a duty to request a statement as to what a claimant can do in spite of her impairments. *See Siegmund v. Colvin*, 190 F. Supp. 3d 301, 309 (E.D.N.Y. 2016) ("[G]iven the lack of reports setting forth the opinion of Plaintiff's treating physicians as to her RFC, the ALJ was required to make reasonable efforts to obtain such reports."). The ALJ specifically noted that Plaintiff's doctors at CCM failed to "specify any limitations for claimant." (Tr. 25.) There is no evidence, however, that the ALJ ever requested an assessment of Plaintiff's functional limitations from Dr.

13

Dobry, or any other doctor at CCM.  Having accorded great weight to the opinions of doctors at CCM (*see* Tr. 25), it is puzzling that the ALJ did not request an assessment from treating physicians there as to what Plaintiff could do despite her mental impairment.[5]

The Court remands to permit the ALJ an opportunity to request a statement as to Plaintiff's RFC from Dr. Dobry and any other doctors who may have treated Plaintiff at CCM. *See Johnson*, 811 F. Supp. 2d at 630-31 (remanding with instruction for ALJ to request assessments from plaintiff's treating sources); *accord. Robins v. Astrue*, No. 10-cv-3281, 2011 WL 2446371, at *3 (E.D.N.Y. June 15, 2011).

## CONCLUSION

For the aforementioned reasons, Defendant's motion for judgment on the pleadings is hereby denied.  Pursuant to 42 U.S.C. § 405(g), the Commissioner's decision is remanded for further proceedings and additional findings consistent with this Order.  The Clerk of Court is respectfully requested to enter judgment and close this case accordingly.

SO ORDERED:

/s/LDH
LaSHANN DeARCY HALL
United States District Judge

Dated:  Brooklyn, New York
        March 31, 2017

---

[5] Such a statement is particularly important, where, as here, the ALJ misread the treatment notes from the treating specialists at CCM, finding that Plaintiff's "mental status examinations were normal for the 2013 to 2014 treatment period." (Tr. 25.)  Rather, notes from Dr. Dobry reported that Plaintiff had symptoms of general and social anxiety, and suffered from panic attacks. (*See e.g.*, Tr. 411-415.)  A statement from Dr. Dobry could provide clarification as to the severity of Plaintiff's symptoms and her limitations in a work-like setting.

14